UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MOORE,<br><br>Plaintiff,<br><br>v.<br><br>DOLLAR TREE STORES INC. dba DOLLAR TREE; PARAMJIT SINGH; RAVINDER SINGH,<br><br>Defendants. | 1:13-cv-01336 LJO BAM<br><br>MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 43) AND DEFENDANT DOLLAR TREE'S MOTION FOR SUMMARY JUDGMENT (DOC. 44) |

## I. INTRODUCTION

This is a civil rights action by Plaintiff Ronald Moore for discrimination at the Dollar Tree Store, located at 3780 West Shields Avenue in Fresno, California (the "Store"). Plaintiff brings this action under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), California's Unruh Act, Cal. Civ. Code § 51 et. seq., and California Health and Safety Code Section 19953, seeking damages, injunctive and declaratory relief, attorneys' fees and costs. Plaintiff alleges that he is confined to a wheelchair and that he encountered barriers to his full and equal access to the Store. Dollar Tree denies that Plaintiff has been discriminated against in any manner. Now before the Court are the Parties' cross-motions for summary judgment. Docs. 43 and 44. The motion was originally set for hearing November 18, 2014, but the hearing was vacated and matter submitted for decision on the papers. *See* M.O. 50.

1

## II. PROCEDURAL HISTORY

Plaintiff filed his complaint against Dollar Tree and its landlords on August 22, 1013. Doc. 2. He filed an amended complaint ("FAC") on March 11, 2014. Doc. 31. The FAC asserted that Defendants denied Plaintiff full and equal access at the time of his visit to the Store because (a) ramps in the parking lot were too steep for him to use, (b) the pathway to the men's restroom was blocked with boxes stacked to the ceiling, and (c) an accessible counter was not open and the counter that he was forced to use was too high. FAC at¶ 10. Plaintiff also sought relief for the following barriers he became aware of later: (a) other features in the parking lot made it inaccessible for wheelchairs, (b) the building entrance door exceeded the maximum allowable pressure and sweep speed, (c) the men's restroom door hardware was not properly configured, (d) the controls on the water closet were not located on the correct side, (e) the water closet in the men's room was improperly configured and the seat was not at the correct height, (f) a properly configured portion at the designated accessible check-out aisle was not provided, (g) proper signage was not provided at the designated accessible check-out aisle, and (h) proper wheelchair clearances were not provided and/or maintained along interior routes of travel. FAC at ¶ 11.

Landlord Defendants were dismissed from this action per Plaintiff's request on May 20, 2014. Doc. 42. This action resolved the liability of Defendants for claims associated with the parking lot. Def.'s Mot. for Summ. J. ("Def.'s MSJ"), Doc. 44, 1, fn. 1; Pl.'s Mot. for Summ. J. ("Pl.'s MSJ"), Doc. 43-1, 9. Discovery closed August 15, 2014. Doc. 20.

Plaintiff filed his motion for summary judgment on October 15, 2014. In this motion, he abandoned claims related to the sweep speed of the building entrance door, the hardware on the door of the men's restroom, the location of the flush controls of the water closet, and the absence of signage at designated accessible checkout counter. Pl.'s MSJ at 9-10. Plaintiff sought resolution on the remaining claims, with the exception of his claim regarding his access to the path to the men's restroom. *Id.* Plaintiff reserved this issue for trial. *Id.* Defendant filed its Opposition November 4, 2014. Doc. 45. Plaintiff replied November 11, 2014. Doc. 48.

Defendant filed a cross-motion for summary judgment on October 20, 2014. In its motion,

Defendant argued that (a) Plaintiff's ADA claims are moot and (b) Plaintiff's state law claims must be dismissed in light of the undisputed facts Defendant puts forward. Def.'s MSJ at 1. Plaintiff filed his Opposition November 4, 2014. Doc. 45. Defendant replied November 10, 2014. Doc. 47. This reply was replaced by an erratum on November 11, 2014. Doc. 49.

In their arguments, both parties relied upon evidence that was not timely disclosed during discovery. *See* Mem. Decision and Order Re. Evidentiary Objections, Doc. 56. Predictably, both parties argued that their own evidence should be admitted and the others' excluded. *Id.* This Court found that excluding the untimely evidence would have the unjust effect of precluding a large amount of evidence vital to the parties' abilities to litigate the case. *Id.* Thus, instead of excluding the evidence, the Court re-opened the discovery period for the limited purpose of allowing Plaintiff to inspect the Store and validate testimony that Defendant claimed would moot Plaintiff's claims. *Id.* The Court also allowed both sides to submit supplemental briefs. *Id.*

Parties filed supplemental briefs December 23, 2014. Reply to Response to Mot. for Summ. J. ("Pl.'s Supp."), Doc. 57; Def.'s Suppl. Brief ("Def.'s Supp."), Doc. 58. In his brief, Plaintiff abandoned claims regarding the location of the toilet and the clear floor space around it. Pl.'s Supp. Plaintiff also presented evidence that he claims supports his outstanding motion for summary judgment as to the pathway to the restroom and the operational pressure of the door. *Id.* Defendants countered that the evidence Plaintiff submitted actually tended to support Defendant's arguments on these issues. Def.'s Supp.

### III. <u>FACTUAL BACKGROUND</u>[1]

Plaintiff suffers from a condition that requires him to use a wheelchair for mobility. Declaration of Ronald Moore ("Moore Decl."), Doc.43-3, ¶ 2. Plaintiff visited Defendant's Store on January 11, 2013 and clams that on that day, the route to the bathroom was obstructed with boxes and checkout counter was uncomfortably high. FAC ¶ 10 (b) & (c). Plaintiff also alleges other barriers exist, though

---

[1] Because on summary judgment the evidence of the non-moving party is assumed to be true and disputed facts are construed in the non-movants favor, the Court sets forth the undisputed facts and notes those disagreements of fact that are relevant to this decision.

he did not encounter them. *Id.* at ¶ 7(c)-(l).

Defendant presents evidence showing that each of the barriers alleged by Plaintiff has been remedied and that the areas in dispute are currently in compliance with ADA and state law requirements. Plaintiff maintains that barriers still exist.

**A.** **Route to the Bathroom.**

Plaintiff describes that he was unable to use the restroom at the Store because there were numerous boxes blocking the path to it. Moore Decl. ¶ 10. The parties agree that items blocking the pathway at the time of Plaintiff's visit were "moveable," however; they dispute whether the items could be moved in a timely fashion. *See* Plaintiff's Response to Dollar Tree's Statement of Undisputed Material Facts ("PSUF"), Doc. No.45-1, #16.

Plaintiff provides evidence that the path was obstructed on three subsequent occasions in June and July of 2014. Declaration of Matthew Dellepere ("Dellepere Decl."), Doc. 45-8, at ¶¶ 4-6; Declaration of Geoshua Levinson ("Levinson Decl."), Doc. 45-4 at ¶¶ 7-9. Dollar Tree district manager Marita Henton testified that as of "early August 2014," the path of travel to the restroom is at least 36 inches in width at all points and that the path is checked "regularly" to ensure ADA compliance. Declaration of Marita Henton ("Henton Decl."), Doc. 44-2 at ¶¶ 1-2. Plaintiff submits evidence that the path to restroom was obstructed when his expert visited the Store on December 12, 2014. Suppl. Decl. of Kelly Bray ("Bray Supp. Decl."), Doc. 57-2, ¶ 7-8. Defendant submits testimony that these obstructions were temporary. Declaration of Marita Henton in Support of Suppl. Brief ("Henton Supp. Decl."), Doc. 58-1, ¶ 3.

**B.** **Accessibility of Checkout Aisles**

Plaintiff claims that at the time of his visit he could not find an open accessible checkout counter and instead had to use a standard counter that was too high for him to reach. FAC ¶ 10(c). This forced him to "reach up uncomfortably" when he had to put his items down and pay for them. Moore Decl. at ¶ 11.

Plaintiff also claims that the accessible counters the store maintains are impermissibly high. FAC

4

¶ 11(j). Plaintiff submits evidence that the height of the accessible checkout counter is 35 inches. Bray Decl. ¶ 8. Defendant does not dispute this assertion. Def.'s Resp. to Pl.'s Statement of Undisputed Facts ("DSUF"), Doc. 46-1; Henton Decl. at 3 ("The accessible checkout aisles do not exceed 38 inches in height.").

## C. **Building Entrance Door Pressure**

Defendants provide evidence that the building entrance door requires less than five pounds of pressure to open. Henton Decl. at ¶4. Plaintiff disputes the truth of this assertion and provides evidence that there are two doors; which required either ten or eleven pounds of pressure to open as of February 18, 2014. *See* Pl.'s Opposition at 11; Bray Decl. ¶ 9. Plaintiff submits evidence that as of December 12, 2014 the operational door pressures of both doors was less than five pounds of pressure. Bray Supp. Decl., Doc. at¶ 5.

## IV. **LEGAL BACKGROUND**

## A. **The ADA**

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a). The ADA defines discrimination to include "the failure to remove architectural barriers" in existing facilities where such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA authorizes only injunctive relief for disabled individuals who suffer prohibited discrimination and does not provide for the recovery of monetary damages by private individuals. *See* 42 U.S.C. § 12188(a)(2); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 (9th Cir.2002). In order to prevail under the ADA Plaintiff must prove that 1) he is disabled under the ADA, 2) that the Dollar Tree store contains architectural barriers prohibited by the ADA, and 3) that the removal of those barriers is readily achievable. 42 U.S.C. § 12183(a)(2). Plaintiff bears the burden of proving the existence of an architectural barrier and suggesting a method of removing the barrier that is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). *See Pascuiti v. New York Yankees*, 1999 WL 1102748 (S.D.N.Y.1999). If Plaintiff satisfies this burden, Defendant then bears the ultimate burden of proving that the suggested method of removal

1   is not readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v). Title III gives the Department of Justice

2   authority to develop regulations implementing the requirements of the ADA. 42 U.S.C. § 12186(b). The

3   ADA Accessibility Guidelines ("ADAAG") are codified at 28 C.F.R. Pt. 36, Appendix A. 28 C.F.R. §

4   36.402(a) provides that "any alteration to a place of public accommodation . . . after January 26, 1992,

5   shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are

6   readily accessible to and usable by individuals with disabilities, including individuals who use

7   wheelchairs."

8       To impose liability, the barrier does not need to completely preclude plaintiff from entering or

9   using the facility; it need only interfere with the plaintiff's full and equal enjoyment of the facility. *See*

10  *Moeller v. Taco Bell Corp.,* 816 F.Supp.2d 831, 848 (N.D.Cal.2011) (citing *Doran v. 7–Eleven Inc.,* 524

11  F.3d 1034, 1041 n. 4 (9th Cir. 2008) (discussing that the ADA "does not limit its antidiscrimination

12  mandate to barriers that completely prohibit access."). "Because the ADAAG establishes the technical

13  standards required for 'full and equal enjoyment,' if a barrier violating the ADAAG relates to a

14  plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination'

15  under the ADA, thereby violating the ADA." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 947

16  (9th Cir. 2011).

17  **B.    California's Unruh Act**

18      The Unruh Act broadly outlaws arbitrary discrimination in public accommodations, including

19  discrimination based on disability. Cal. Civ. Code § 51(b); *Jankey v. Sung Koo Lee,* 55 Cal. 4th 1038,

20  1044 (2012). In the disability context, the Unruh Act operates virtually identically to the ADA. *Molski v.*

21  *M.J. Cable, Inc.,* 481 F.3d 724, 731 (9th Cir. 2007). Any violation of the ADA necessarily constitutes a

22  violation of the Unruh Act. *Id.* (citing Cal. Civ.Code § 51(f)). Where the basis of liability for an Unruh

23  Act violation is an ADA violation, plaintiff need not prove intentional discrimination. *Munson v. Del*

24  *Taco, Inc.,* 46 Cal. 4th 661, 678 (2009). Moreover, the Unruh Act allows for monetary damages

25  including automatic minimum penalties in the amount of $4,000 per occurrence, and attorneys' fees as

26  "may be determined by the court." Cal. Civ. Code § 52. To recover statutory damages, plaintiffs must

6

show that they were denied equal access; proof of actual damages is not required. *See, e.g., Botosan v. Paul McNally Realty,* 216 F.3d 827, 835 (9th Cir. 2000).

**C.**     **California Health and Safety Codes**

California Health and Safety Code section 19955 ("Health and Safety Code") requires that California public accommodations and facilities adhere to the state architect's regulations under Government Code 4450 to ensure all public accommodations are accessible to persons with disabilities. Cal. Health & Safety Code § 19955; Cal. Gov. Code § 4450. From December 31, 1981 to the present, the standards governing the physical accessibility of public accommodations in California have included those set forth in Title 24 of the California Regulatory Code ("Title 24"). *Moeller*, 816 F.Supp.2d at 848. The Health and Safety Code does not require the plaintiff to establish that he or she was individually denied access to the public accommodation; rather, it allows the plaintiff to enforce compliance (i.e., injunctive relief) with the handicapped access standards provided for by the Health and Safety Code and the Government Code. *Urhausen v. Longs Drug Stores California, Inc*., 155 Cal. App. 4th 254, 262 (2007). It also entitles the prevailing party in the action to attorneys' fees. Cal. Health & Safety Code § 19953.

## V. APPLICABLE CODE SECTIONS

**A.**     **ADA**

Under the ADA, alterations to commercial facilities completed between January 26, 1992 and September 15, 2010 are subject to the 1991 ADAAG Standards. 28 C.F.R. §§ 36.401, 36.406. The ADA defines an alteration as "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." 28 C.F.R. § 36.402(b). "Alterations include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions." *Id.* Any alterations undertaken after March 15, 2012 must comply with the 2010 ADAAG guidelines. 28 C.F.R. § 35.151(c); *see also* 28 C.F.R. § 36.401(a)(1).

Defendant opened the store in April of 2002. DSUF #13. Prior to its opening and between the years of 2001 and 2002, Defendant remodeled the interior to suit its needs. DSUF #14. Defendant disputes Plaintiff's characterization of its building activities as a "complete remodel," claiming that the "construction documents speak for themselves." *Id.* However, according to construction plans identified by Bates Numbers DT000001-4, Defendant had a significant amount of work done to the interior, beginning in November 2001. TEM Decl. 43-6 ¶ 7, Ex. C. These plans called for remodeling the bathrooms and offices and wiring the checkout areas, among other improvements. *Id.*[2] The Court considers this a significant alteration of the space.

Because it is undisputed that Defendant altered the interior of the Store between January 26, 2002 and September 15, 2010, the 1991 ADAAG Standards apply to conditions that Plaintiff alleges existed prior to any remedial efforts by Defendant.

**B.    California Code**

As of July 1, 1970, whenever buildings of public accommodation are altered, they must comply with California's Building Codes. Cal. Health & Safety Code § 19959. This requirement only pertains to the area that is altered. *Id.* Since December 31, 1981, the standards have been set forth in Title 24 of the California regulatory code Title 24 of the California Code of Regulations. Cal. Health & Safety Code § 18902. The Code is published in tri-annual cycles. Cal. Health & Safety Code § 18938(c). The 2001 Code was made effective November 1, 2002. Cal. Bldg. Standards Comm'n, 2001 Cal. Bldg. Code, Title 24, title page, Doc. 149F01. For the three years prior to that date, the 1998 Code was effective. Cal. Health & Safety Code § 18938(c).

Logically, alterations made to the Store must have occurred prior to the Store's opening in April of 2002. Since the 2001 Code did not become effective until November 1, 2002, the 1998 code is operative. Any alterations undertaken by Defendant after January 1, 2014 (including any that result from

---

[2] Plaintiff also provides evidence in the form of deposition testimony of James Johnson, who was identified by the Defendant as the person most knowledgeable about the construction and alteration history of the Store. TEM Decl.at ¶ 8. Mr. Johnson testified that the building underwent some amount of construction prior to its opening in 2002 and that it was expanded in 2004. TEM Decl.at ¶ 8, Ex. D, at 38. No construction plans were provided by either party regarding the 2004 expansion, so the Court cannot determine the significance, if any, of the expansion activities.

this action must comply with the 2013 California Building Code. Cal. Bldg. Standards Comm'n, 2013 Cal. Bldg. Code, Title 24, title page.[3]

# VI. <u>STANDARD OF DECISION</u>

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

---

[3] Available at:
http://www.ecodes.biz/ecodes_support/free_resources/2013California/13Building/PDFs/2013%20California%20Building%20Code%20Volume%201%20Title%20Page.pdf.

9

admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## VII. <u>ANALYSIS</u>

Parties move independently for summary judgment as to whether most barriers alleged by Plaintiff are prohibited by the ADA or State regulations. However, only Defendant seeks judgment as to the issue of whether the path the restroom is impermissibly blocked. Plaintiff also seeks judgment as to certain threshold issues.

## A.    <u>Threshold ADA Issues</u>

Plaintiff moves for summary judgment establishing that he is a disabled person as defined by the ADA. Pl.'s MSJ at 4-5. In support of this assertion, Plaintiff presents testimonial evidence that he suffers from a condition that requires him to use a wheelchair for mobility. Moore Decl. at ¶ 2. Plaintiff also presents a copy of a placard issued to him by the California Department of Motor Vehicles, which allows him to park in parking areas designated for the disabled. Moore Decl. ¶ 4, Ex. A. Defendant does not present any evidence to dispute these claims; or put forth any arguments in his Opposition as to how Plaintiff's evidence is insufficient. *See* DSUF #1-5. Since there is no genuine dispute as to these facts, Plaintiff is entitled to summary judgment on this issue.

Plaintiff moves for summary judgment establishing that the Store is a place of public accommodation. Pl.'s MSJ at 5-6. Under the ADA, "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment" are all examples of places of public accommodation. 42 U.S.C.A. § 12181(7)(E). Plaintiff claims that the Parties have stipulated that the

Store is a place of public accommodation. *Id.* at 8. Defendant does not argue otherwise in its Opposition or anywhere in the papers supporting its own MSJ. Thus, this issue is not the subject of a genuine dispute and Plaintiff is entitled to summary judgment on this issue.

Plaintiff also moves for summary judgment establishing that he has "actual knowledge" of the barriers documented in expert reports. Pl.'s MSJ at 13-14. Plaintiff cites to his own testimony attesting to this fact. Moore Decl. ¶ 12. Defendant disputes this assertion, based on lack of knowledge. DSUF # 20. Defendant, however, provides no evidence of its own to contradict this fact and provides no explanation as to why Plaintiff's declaration does not establish the absence of a genuine dispute regarding this issue. Therefore, Plaintiff is entitled to summary judgment as to the issue that he has "personal knowledge" of the barriers identified in the expert reports.

Finally, Plaintiff moves for summary judgment as to the issue that he has suffered "irreparable injury." Pl.'s MSJ at 14. Plaintiff premises this claim on this Court's finding that Defendant has violated the ADA. *Id.* ("When a federal statute has been violated, it is presumed that a plaintiff has suffered irreparable injury . . . Moore has established that Defendant violated the ADA (a federal statute)."). As discussed in Sections VII(A) & C, *infra,* the Court does not find that Plaintiff is established to summary judgment on his ADA act claims. Thus, he is not entitled summary judgment as to whether he has suffered "irreparable damage."

For the reasons described above, the Court GRANTS Plaintiff's motion for summary judgment, as to the issues that Plaintiff is a disabled person under the ADA, that the Defendant's Store is a place of public accommodation, and that he has personal knowledge of the barriers identified his expert reports. The Court DENIES summary judgment on the issue that Plaintiff has suffered irreparable damage.

**B.**     **Operational Pressure of the Front Doors**

Both sides seek summary judgment as to Plaintiff's claim that the operational pressure of the front doors exceeds state guidelines. Pl.'s MSJ at 12-13; Def.'s. MSJ at 5. The 1998 California Building Code provides that "the maximum effort to operate doors shall not exceed 8 ½ pounds (38 N) for exterior doors and 5 pounds (22 N) for interior doors." 1998 Cal. Bldg. Code 1133B.2.5. Here, the doors

in question are described as "entrance doors" by both parties. Thus, the Court considers them to be

"exterior doors" which may not exceed 8 ½ pounds of pressure. Plaintiff's own evidence demonstrates

that the operational pressure required to open these doors was less than five pounds of pressure as of its

last inspection on December 12, 2014. Bray Suppl. Decl. at ¶ 5. Defendant argues that the Store's current

compliance moots this claim. Def.'s Mem. at 5; Def.'s Supp. at 3.[4] Plaintiff argues that the Store's

current compliance with this guideline does not moot its claim under the voluntary cessation doctrine.

Pl.'s MSJ at 12-13; Pl.'s Supp. At 1-2. Plaintiff further claims that the operational pressure must be

continually maintained and that injunctive relief is needed to ensure continued compliance. *Id.*

### 1.   <u>Legal Background of Voluntary Cessation Doctrine</u>

An issue is moot "when the issues presented are no longer 'live' or the parties lack a legally

cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "If the parties

cannot obtain any effective relief, any opinion about the legality of a challenged action is advisory. *Id.*

"The question is not whether the precise relief sought at the time the application for an injunction was

filed is still available. The question is whether there can be any effective relief." *Or. Natural Res.*

*Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006).

Courts have long recognized a "voluntary cessation exception" to mootness. *Rosemere*

*Neighborhood Ass'n v. U.S. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009). Under this doctrine, when a

defendant's voluntary cessation of a challenged activity is the basis for mootness, it becomes the

defendant's burden to demonstrate that "subsequent events made it absolutely clear that the allegedly

wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw*

*Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "The heavy burden of persuading the court that the

challenged conduct cannot reasonably be expected to start up again lies with the party asserting

mootness." *Id.* This is because "otherwise they would simply be free to 'return to (their) old ways' after

---

[4] Defendant argues for the first time in his supplementary brief that Plaintiff lacks standing to bring this claim. Def.'s Supp. at 3. The Court will not consider arguments brought for the first time in a reply, much less a *supplemental* reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Defendant may seek leave from the court to file an untimely motion on this issue or it may raise it at trial.

the threat of a lawsuit had passed. *Armster v. U.S. Dist. Court for Cent. Dist. of California,* 806 F.2d

1347, 1359 (9th Cir. 1986) (quoting *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67 (1983)).

Some courts consider ADA barrier cases as a "unique subset" of voluntary cessation-doctrine

cases. *See Houston v. 7-Eleven, Inc.,* No. 13-60004-CIV, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31,

2014). However, these courts rely on the basic principle that external circumstances can change such

that it becomes clear that a defendant cannot reasonably be expected to resume a challenged activity. *Id.*

at *3 ("Since 7–Eleven has made structural modifications to remove or remediate all ADA violations at

the 7090 Store, this Court is convinced that the allegedly wrongful behavior could not reasonably be

expected to recur."). Thus, "a defendant's voluntary removal of alleged barriers prior to trial can have

the effect of mooting [an] ADA claim." *Oliver v. Ralphs Grocery Co.,* 654 F.3d 903, 905 (9th Cir.

2011). This "is particularly true of structural modifications, which are unlikely to be altered in the

future." *Indep. Living Res. v. Oregon Arena Corp.,* 982 F. Supp. 698, 774 (D. Or. 1997) supplemented, 1

F. Supp. 2d 1159 (D. Or. 1998).

**2.      Whether the Court Must Dismiss Plaintiff's Claim Regarding the Operational Pressure of the Front Doors**

As discussed above, the most recent evidence submitted by both Parties demonstrates the Store's

exterior doors currently comply with State law. The parties, however, dispute facts that would show

whether the defendant can reasonably be expected to lapse into non-compliance. Plaintiff presents

evidence that "the operational door pressure must be regularly checked and adjusted as the screws and

operating mechanisms which control such pressures do not remain static  and can cause the door's

pressure to increase with time and weather, even if initially set properly." Bray Decl. at ¶ 10. Dollar

Tree's district manager testifies that the operational door pressure is "checked regularly to make sure it

does not exceed 5 lbs of pressure." Henton Decl. at ¶ 4. While Defendants analogize this testimony to

the facts of structural modification cases, this is a bit of a stretch. In those cases, Defendants spent

considerable sums of money physically altering their properties. *See, e.g., Houston v. 7-Eleven, Inc.,*

2014 WL 351970 at *2 ("These accessibility upgrades included repaving and restriping the parking lot

and enlarging the existing disabled parking space and access isle, remodeling the restroom to make it

larger, relocating the sink, installing a new tile floor, and relocating the back storage room at the store. In total, 7–Eleven spent over $30,000 performing these accessibility upgrades."). Here, Defendant submits no evidence that they have made permanent modifications that would similarly make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 189. Rather, Defendant relies solely on the testimony of a district manager that the changes are permanent. Plaintiff disputes the weight and credibility this testimony is given. Since the Court cannot weigh evidence at this stage, Defendant cannot establish that Plaintiff's claim on this issue is moot.

Similarly, Plaintiff has not established that he is entitled to summary judgment on this claim either. Plaintiff provides evidence that the operational pressure of the exterior doors was between 10 and 11 pounds on one occasion (February 18, 2014). Bray Decl. at ¶ 9. Plaintiff also provides evidence that the operational pressure must be checked regularly. *Id.* at ¶ 10. Defendant presents evidence that the operational pressure is checked regularly and that the door is currently in compliance. Henton Decl. at ¶ 4. Thus, there is a genuine dispute as to whether the Defendant's current practices regarding the doors warrant injunctive relief.

Thus, the Court DENIES Plaintiff's and Defendant's motions for summary judgment as to whether the operational pressure of the store's front doors comply with California law.

**C.** **Whether the Checkout Counter Height Complies with State and Federal Law**

Both parties move for summary judgment on Plaintiff's claim that the height of the accessible checkout counter violates California guidelines as alleged in paragraph 11(j) of the FAC. Def.'s Mem. at 4-5; Pl.'s Mem. at 11-12. Plaintiff submits evidence that the height of the accessible checkout counter is 35 inches. Bray Decl. ¶ 8. Defendant does not dispute this assertion. DSUF #3. Henton Decl. at 3 ("The accessible checkout aisles do not exceed 38 inches in height."). The parties, however, dispute which code sections apply to the checkout counter in this case.

The 1998 California Building Code provides that accessible checkstands have a maximum counter height "not exceeding 38 inches (965 mm) above the finish floor." Cal. Bldg. Code § 1110B.1.3.

Plaintiff argues that Cal. Bldg. Code § 1122B.4 should apply. Pl.'s Opposition, Doc. 48, at 11. Section

1122B.4, however, states that a maximum height of 34 inches is mandated for single counters that

contain "more than one transaction station, such as (but not limited to) a bank counter with multiple

teller windows or a retail sales counter with multiple cash register stations . . ." Plaintiff does not argue,

or submit evidence that would show that the counter at issue here is a single counter with more than one

transaction statement. Therefore, section 1110B.1.3 is the correct guideline; not section 1122B.4.

Because the undisputed evidence shows that the counter is 35 inches in height, it complies with the

California Building Code.

      The relevant federal guidelines provide that:

> "[i]n department stores and miscellaneous retail stores where counters
> have cash registers and are provided for sales or distribution of goods or
> services to the public, at least one of each type shall have a portion of the
> counter which is at least 36 inches (915 mm) in length with a maximum
> height of 36 inches (915 mm) above the finish floor."

1991 ADAAG § 7.2(1).[5] The guidelines also provide that counter height in checkout aisles "shall not

exceed 38 inches above the finish floor." 1991 ADAAG § 7.3(2). Because the undisputed evidence

shows that the counter is 35 inches in height, it complies with both guidelines.

      In Plaintiff's Opposition, he argues that Defendant is not entitled to summary judgment on this

claim because the accessible checkout aisles "are not always open." Pl.'s Opposition at 9. This argument

may be pertinent to resolution of Plaintiff's separate claim regarding the availability of accessible

counters. *See* FAC ¶ 10(c).[6] It is irrelevant, however, to the issue of whether the height of accessible

counters complies with state and federal guidelines.

      The parties agree that there are no further factual disputes related to this claim. The counter

height at issue is compliant with both state and federal guidelines. Therefore, the Court GRANTS

Defendant's Motion for summary judgment on this issue; Plaintiff's motion for summary judgment on

this issue is DENIED.

---

[5] Available at http://www.ada.gov/1991standards/adastd94-archive.pdf.
[6] Neither party, however, moved for summary judgment on this claim.

15

**D.**   **Maintenance of An Accessible Path the Men's Restroom**

Federal and state guidelines require that shops provide an accessible route of travel through their facilities at least 36 inches wide. 1991 ADAAG § 4.3.3; 1998 Cal. Bldg. Code § 1133B.6.2.

Defendants move for summary judgment on Plaintiff's claim that the Store does not maintain an accessible path of travel to the men's restroom. Def.'s MSJ at 11-15. Defendant argues that (a) to the extent that the pathway is ever blocked, it can be cleared in a negligible amount of time and (b) the claim is moot. *Id.*  Plaintiff argues that factual disputes exist that preclude summary judgment this claim. Pl.'s Opposition at 4-6.

### 1.   Whether Barriers Encountered By Plaintiff and Investigators Presented "Mere Delays"

Defendant argues that barriers encountered by Plaintiff and his investigators did not amount to denials of access to the men's restroom because the barriers were made of moveable objects. Def.'s MSJ at 11. Rather, Defendants argue that their placement only meant that there would be a "mere delay" in access. *Id.* Defendant cites to several cases where delays in access to facilities were found not to be actionable. Some of these cases involved findings that delays in access did not amount to denials because the delays were "reasonable." *Anderson v. Ross Stores, Inc.*, No. C 99-4056 CRB, 2000 WL 1585269, at *10 (N.D. Cal. Oct. 10, 2000) (" . . . the undisputed evidence shows that the Ross Stores employees were attempting to resolve Ms. Anderson's request for accommodation during the delay. . . the defendant's employees did not act unreasonably . . ."); *Frankeberger v. Starwood Hotels & Resorts Worldwide, Inc., No.* C09-1827RSL, 2010 WL 2217871, at *4 (W.D. Wash. June 1, 2010) (". . . a wait of less than sixteen minutes for assistance was neither unreasonable nor reflective of discrimination."). Other cases cited by Defendant held that plaintiffs lacked standing because they could not establish injury-in-fact. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839 (9th Cir. 2007) ("We agree that the initial mistake in assigning a room to Skaff with a bathtub rather than a roll-in shower caused no cognizable damage because it was immediately corrected by reassignment to a room with a roll-in shower as had been requested."); *O'Connor v. Scottsdale Healthcare Corp.*, 871 F. Supp. 2d 900, 904 (D. Ariz. 2012), aff'd, 582 F. App'x 695 (9th Cir. 2014) ("Although Plaintiff obviously found her

16

interaction with the security guard very unpleasant, the short delay caused by the encounter was too minor an injury to confer standing under the ADA."). Under these lines of case law, Defendant might be entitled to summary judgment if it can affirmatively demonstrate that the delay that would have accompanied clearing a path to the restroom was either reasonable or would have been so minor as to undermine Plaintiff's claim to have suffered an injury.

Plaintiff, however, testifies that at the time of his visit there were so many boxes blocking the pathway that "it would have taken forever" to move them. Moore Decl. ¶5. Plaintiff's expert also testified that when he visited the property on July 3, 2014 the pathway was obstructed in such was that it would have been "impossible" for a wheelchair to pass. Dellepere Decl. ¶ 6. While Dellepere did not estimate how long it would have taken to clear a path, he provided photographs showing a large number of boxes in the pathway. Dellepere Decl. Ex. B. Clearly, the parties dispute the extent to which the pathway was blocked with boxes on both occasions. Parties similarly dispute whether Defendant has a policy or practice of storing boxes in a manner that obstructs the path to the restroom, or if Plaintiff and his experts happened upon the Store while it was in the process of moving its inventory around. Since these facts are material to the issue of whether removing the boxes would have presented an excusable "mere delay" to disabled patrons such as Plaintiff, summary judgment is not appropriate.

## 2. **Whether this Claim is Moot**

Defendant also presents evidence that, as of "early August 2014," the path of travel to the restroom is at least 36 inches wide and that it is "regularly checked to ensure compliance." Henton Decl. ¶ 2. Defendant claims that this evidence shows that the conditions have been remedied and that Plaintiff's claims are moot. Def.'s MSJ at 4. Plaintiff argues that Defendant has not cured this deficiency and submits evidence that the pathway was obstructed when his expert went to visit the Store on December 12, 2014. Pl.'s Supp. at 4. Defendant responds that Plaintiff's characterization of its expert's evidence should not be credited. Def.'s Supp. at 4. However, at summary judgment, a court cannot make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Further, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Here,

Plaintiff has provided evidence that, I believe, undermines Defendant's assertion that the pathway to the men's restroom remains free of obstacles.  Thus, the Court DENIES Defendant's Motion for summary judgment on this issue.

**E.    Availability of Damages under State Law**

Defendants maintain that Plaintiff may not recover damages under California State law for claims related to his experience with the checkout counter or the pathway to the restroom because a) he does not provide measurements of alleged barriers, b) he does not know when the store was constructed, c) he failed to request modifications and d) he does not establish that he was denied access. Def.'s MSJ at 9-14.

**1.    Lack of Measurements**

Defendant cites to *Martinez v. Columbia Sportswear USA Corp.*, 859 F. Supp. 2d 1174, 1179 (E.D. Cal. 2012) aff'd, 553 F. App'x 760 (9th Cir. 2014), for the proposition that "a plaintiff cannot meet his burden to show the existence of a barrier if he does not provide measurements of the alleged barrier." Def.'s MSJ at 9. This does not accurately describe the court's holding. In *Martinez,* the plaintiff alleged that an Eddie Bauer store failed to display an ADA ISA sign. *Id.* at 1178. When the store put one up, plaintiff claimed that his claim was not moot because the sign was hung too low. *Id.* Plaintiff, however, could not provide any factual or legal authority for this position. *Id.* at 1179. The court awarded summary judgment to Eddie Bauer because Plaintiff did not present any affirmative evidence to support his claim beyond the conclusory allegation that the sign was "too low." *Id.*

Here, Plaintiff presents affirmative evidence of the barriers in his testimony describing that the counter he used caused him discomfort because it was too high and that he was unable to navigate the path to the restroom because it was too narrow. Moore Decl. As Plaintiff points out, the Ninth Circuit has found evidence based on ADA plaintiffs' personal experiences credible. *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013) ("The ADA was enacted as a boon to disabled people, not expert witnesses. Specialized or technical knowledge is not required to understand [plaintiff]'s straightforward assertions."). Plaintiff's testimony sufficient to support his assertion that barriers exist at

Defendant's store.

### 2. Failure to Identify Version of Building Code

Defendant also claims that Plaintiff cannot establish a state law violation because he cannot identify which version of the building code is applicable. Def's MSJ at 10. Defendant relies, in part, on an unpublished opinion from the Southern District of California, wherein a plaintiff "admittedly" did not know the dates on which the features of the subject property were constructed or altered and "thus could not show a violation of law." *Sharp v. Covenant Care LLC, et al.,* 11-cv-01379-CAB (WMc), Doc. 73 at 2-3 (S.D. Cal. Apr. 12, 2013). The *Sharp* court relied on *Gray v. JPMorgan Chase Bank*, No. CV 11-05337 DDP PLAX, 2012 WL 1340315, at *3 (C.D. Cal. Apr. 18, 2012), wherein a court dismissed a case because the operative complaint did not allege facts that would support his allegation that a particular version of the code applied.

Here, Plaintiff provides evidence that he obtained during discovery that this Court was able to rely on to determine which version of the Code applied. *See* Section V(B), *supra*. Plaintiff alleged facts in his operative complaint that support the violations of the applicable code provisions he asserted; and he provided evidence that support these allegations. This is sufficient to overcome defendant's motion for summary judgment.

### 3. Failure to Request Modifications

In his FAC, Plaintiff cites to 42 U.S.C. § 12182(b)(2)(A)(ii), and alleges that "Defendants violated the ADA by failing to make reasonable modifications in policies, practices or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities or accommodations." FAC ¶¶ 29-30. Plaintiff seeks declaratory relief on this issue so that he may pursue damages under the Unruh Act. *Id.* at ¶ 32. Defendant argues that he is entitled to summary judgment on this issue because Plaintiff "never requested any modifications to Dollar Tree's policies and/or practices." Def.'s MSJ at 11.

Plaintiff responds that he "is not asking that Dollar Tree modify its policies" but that "it may be true that Dollar Tree must modify its own internal policies and procedures to that [it complies with state

and federal laws." Pl.'s Opposition at 3.   The Court does not see how Plaintiff can both seek to hold

Defendant liable for failing to modify it policies while denying that policy modification is a necessary

form of relief. Thus, the Court reads Plaintiff's statement as waiving his claims in paragraphs 29-32.

Therefore, the Court GRANTS Defendant's motion for summary judgment as to claims

presented in paragraphs 29-32 of the FAC.

### 4.     Whether Plaintiff was Denied Access

Defendant argues that Plaintiff's state law claims for damages fail because Plaintiff "cannot

show that he personally encountered a violation that caused him 'difficulty, discomfort' or

embarrassment.'" Def.'s MSJ at 15. Defendant asserts that access to the restroom could have been

established in a few minutes and that Plaintiff was not aggrieved by the high checkstand because he paid

with cash. *Id.* As discussed in Section VII(D), *supra*, the Court has already found that there are genuine

disputes as to facts regarding the accessibility of the path to the restroom. Thus, this issue may not be

decided on summary judgment.

As to whether the Plaintiff was personally harmed by his experience at the checkstand,

Defendant presents Plaintiff's deposition testimony where Plaintiff admits that he paid cash at the time

of his visit. Deposition of Ronald Moore ("Moore Depo."), Doc. 44-14, at 38. Defendant argues that

Plaintiff's complaints regarding the height of the checkstand could only have affected him personally if

paid by credit card or check, and thus required use of the counter.

Plaintiff did not squarely address this issue in his Opposition. Plaintiff did, however, present

testimony in support of his own motion for summary judgment wherein he described that the checkout

counter was too high for him to place the parcels he intended to purchase. Moore Decl. at ¶ 11 ("When I

got back to the cashier counter, the counter was to high for me to easily put my items down and pay for

them. . .I already suffer a lot of back pains, and anything that requires me to reach too high just adds to

the shooting pain I feel."). This is a sufficient showing that the alleged violation caused him "difficulty,

discomfort, or embarrassment." Thus, the Court DENIES Defendant's motion for summary judgment as

to this issue.

**F.**    **Whether This Court Should Decline Supplemental Jurisdiction over State Law Claims**

Defendant argues that this Court should decline supplemental jurisdiction over Plaintiff's state law claims because they raise novel and complex issues of state law and because his state law claims predominate over his federal claims. Def.'s MSJ at 17-20.[7]

**1.**    **Novelty and Complexity of State Law Claims**

Defendant argues that this Court should decline supplemental jurisdiction because the case presents "novel and complex issues of state law." Def.'s MSJ at 17-18. The only examples Defendant provides, however, are either irrelevant or erroneous.

First, Defendant argues that this Court should be wary of the recently enacted SB 1186, which addresses the misuse of California's disability laws by plaintiffs who seek to stack claims for the same violations across multiple visits to the same facility. *Id.* at 17. SB 1186 addresses this through "subdivision (h) of Section 55.56 of the Civil Code [which] reiterate[s] that where multiple claims for the same construction-related accessibility violation on separate particular occasions are alleged, a plaintiff's conduct must have a reasonable explanation for the asserted need for multiple visits to a site where a known barrier violation would deny full and equal access, in light of the obligation to mitigate damages." 2012 Cal. Legis. Serv. Ch. 383 (S.B. 1186) § 25(a). First, this Court does not consider the evaluation of a "reasonable explanation" to be an especially complex issue of law. Second, as Plaintiff points out, this argument is irrelevant to the case at hand because Plaintiff does not seek to stack claims across multiple visits in a manner that would invoke this new section.

Defendant also argues that the Ninth Circuit and California appellate courts are split as to the standard under which defendants can recover attorneys' fees under California law. Def.'s' MSJ at 18-19. This is not an accurate characterization of the case law. The Ninth Circuit acknowledges that California courts mandate recovery of attorney's fees under the state's disability laws. *Hubbard v. SoBreck, LLC*, 554 F.3d 742, 746 (9th Cir. 2009) (citing *Molski v. Arciero Wine Grp.*, 164 Cal. App. 4th 786, 793

---

[7] Defendant also argues that supplemental jurisdiction should be declined if all federal claims have been dismissed. This argument is moot because the Court has not dismissed all of Plaintiff's federal claims.

(2008)). However, the Ninth Circuit has also found that where defendants seek to recover for state law claims that parallel ADA claims, there is a conflict *between the laws*. *Id.* at 747. Their holding on this issue is clear- that parallel ADA claims trump state law claims and the decision to award attorneys' fees to the prevailing party is discretionary. *Id.* at 745.

The California Supreme Court has disagreed with the Ninth Circuit's holding. *Jankey*, 55 Cal. 4th at 1053. However, whether a state statute is preempted by federal law is a question of federal law. *See Local Union 598 v. J.A. Jones Construction Co.*, 846 F.2d 1213, 1218 (9th Cir.1988) ("Preemption is a question of federal law . . ."). Therefore, this Court is bound by the Ninth Circuit's decision in *Hubbard*. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987) ("District courts are, of course, bound by the law of their own circuit."); *see also, e.g.*, *Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126, 1132 (S.D. Cal. 2013) (finding that the standard established in *Hubbard* trumped the holding in *Jankey*); *Plyley v. Grangaard*, No. C 12-05825 WHA, 2014 WL 1599930, at *3 (N.D. Cal. Apr. 21, 2014)(same).

### 2.    Whether State Law Claims Predominate

Defendant also argues that argue that this Court should decline to exercise jurisdiction because the state law claims predominate over the federal claims. Def's. MSJ at 19-20. Defendant cites to several examples of cases dismissed by federal courts on this principle. *Id.* Plaintiffs argues (without elaboration) that these cases present distinct factual scenarios. Pl.'s Opposition at 17.

Ninth Circuit case law provides that once a factual predicate is established corresponding to one of the 1367(c) categories, the district courts must exercise discretion "with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness, and comity.'" *Executive Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1557 (9th Cir. 1994) (overruled on other grounds). Thus, courts must explain how declining jurisdiction serves these purposes. *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.,* 333 F.3d 923, 925 (9th Cir. 2003).

Cases cited by Defendant are similar to this case to the extent that they involve parallel state law

1  and ADA claims. They are not persuasive though, because they failed provide meaningful reasons as to

2  how the state law claims "substantially predominate" over federal claims. Moreover, most failed to

3  address how declining jurisdiction served these the values of economy, convenience, fairness, and

4  comity. Finally, most of the cases cited declined jurisdiction because they involved claims stacked

5  across visits; which courts felt presented novel and complex issues of state law. *See Pinnock v. Safino*

6  *Designs, Inc.*, No. 06CV1707-L (WMC), 2007 WL 2462107, at *4 (S.D. Cal. Aug. 28, 2007); *Molski v.*

7  *EOS Estate Winery*, No. CV 03-5880-GAF, 2005 WL 3952249, at *3 (C.D. Cal. July 14, 2005); *Jankey*

8  *v. Beach Hut*, No. CV 05-3856 SVW JTLX, 2005 WL 5517235, at *6 (C.D. Cal. Dec. 8, 2005); *Molski*

9  *v. Hitching Post I Rest., Inc*., No. CV 04-1077SVWRNBX, 2005 WL 3952248, at *7 (C.D. Cal. May 25,

10  2005).

11      This Court finds that the mere fact that the state claims allow for the recovery of monetary

12  damages, whereas the ADA provides for injunctive relief only, does not compel the conclusion that the

13  state claims "substantially predominate" over the federal claim. *See also Chavez v. Suzuki,* No.

14  05CV1569 BTM (BLM), 2005 WL 3477848, at *2 (S.D. Cal. Nov. 30, 2005). Other than the availability

15  of statutory damages under state law, the state and federal claims are identical. The burdens of proof and

16  standards of liability are the same. Indeed, the Unruh Act specifically provides that a violation under the

17  ADA also constitutes a violation of the Unruh Act. Cal. Civ. Code §§ 51(f). Moreover, the Court's

18  exercise of supplemental jurisdiction would best advance economy, convenience, fairness, and comity.

19  The state and federal claims are so intertwined that it makes little sense to decline supplemental

20  jurisdiction. To do so would create the danger of multiple suits, courts rushing to judgment, increased

21  litigation costs, and wasted judicial resources.

22      Thus, this Court DENIES Defendant's request to decline supplemental jurisdiction.

23      **VIII. <u>CONCLUSION AND ORDER</u>**

24      **For the reasons set forth above**, **Plaintiff's motion for summary judgment, Doc. 43, is**

25  **GRANTED IN PART and DENIED IN PART as follows:**

26      The Court GRANTS Plaintiff's motion for summary judgment, as to the issues that Plaintiff is a

disabled person under the ADA, that the Defendant's store is a place of public accommodation, and that he has personal knowledge of the barriers identified his expert reports.

The Court DENIES summary judgment on the issue that Plaintiff has suffered irreparable damage.

The Court DENIES Plaintiff's motion for summary judgment as to whether the operational pressures of the store's front doors comply with California law.

The Court DENIES Plaintiff's motion for summary judgment as to the compliance of the accessible checkout counters with state and federal disability guidelines.

**Defendants' motion for summary judgment, Doc. 44, is GRANTED IN PART and DENIED IN PART as follows:**

The Court DENIES Defendant's motion for summary judgment as to whether the operational pressures of the store's front doors comply with California law.

The Court GRANTS Defendant's motion for summary judgment as to the compliance of the accessible checkout counters with state and federal disability guidelines.

The Court DENIES Defendant's motion for summary judgment as to the pathway to the restroom.

The Court DENIES Defendant's motion for summary judgment as to whether Plaintiff may not seek damages because he failed to provide measurements, adequately identify the correct version of the California Building Code or describe his denial of access.

The Court GRANTS Defendant's motion for summary judgment as to claims presented in paragraphs 29-32 of the FAC.

The Court DENIES Defendant's request to decline supplemental jurisdiction over Plaintiff's state law claims.

Trial is scheduled to begin February 24, 2015 at 8:30 a.m. before U.S. District Judge Lawrence J. O'Neill in Department 4 (LJO). However, there are two criminal cases calendared ahead of this one on

this date. Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties.


IT IS SO ORDERED.

    Dated:   **January 5, 2015**                 **/s/ Lawrence J. O'Neill**
                                                   UNITED STATES DISTRICT JUDGE